UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CHRISTINA THOGODE,

                              Plaintiff,

v.                                                             3:14-CV-1051

CAROLYN W. COLVIN,                               (DNH/TWD)
ACTING COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

APPEARANCES:                                       OF COUNSEL:

LACHMAN & GROTON                       PETER A. GORTON, ESQ.
*Counsel for Plaintiff*
1500 E. Main St.
P.O. Box 89
Endicott, NY 13761-0089

HON. RICHARD S. HARTUNIAN
United States Attorney for the               MONIKA K. CRAWFORD, ESQ.
 Northern District of New York            REBECCA H. ESTELLE, ESQ.
*Counsel for Defendant*                       Special Assistant United States Attorneys
Room 218
James T. Foley U.S. Courthouse
Albany, NY 12207

OFFICE OF GENERAL COUNSEL         STEPHEN P. CONTE, ESQ.
Social Security Administration            Chief Counsel, Region II
26 Federal Plaza, Room 3904
New York, NY 10278

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## REPORT AND RECOMMENDATION

     This matter was referred to the undersigned for report and recommendation by the

Honorable David N. Hurd, United States District Judge, pursuant to 28 U.S.C. § 636(b) and

Northern District of New York Local Rule 72.3. This case has proceeded in accordance with General Order 18 of this Court which sets forth the procedures to be followed when appealing a denial of Social Security benefits. Both parties have filed briefs. Oral argument was not heard. For the reasons discussed below, it is recommended that the ALJ's decision be affirmed.

I. BACKGROUND AND PROCEDURAL HISTORY

Plaintiff was twenty-three years old at the time of the hearing. (Administrative Transcript ("T.") at 33.[1]) She has a high school diploma, but no further education. (T. at 33.) She graduated from BOCES Broome Delaware Tioga. (T. at 151.) She has had one job as a grocery bagger at a grocery store. (T. at 38.) She was unable to continue this job because of transportation issues. (T. at 39.) The store also wanted its baggers to be able to run a cash register, which Plaintiff testified she could not do. (T. at 39.) Plaintiff has a four year old son and currently lives with her boyfriend, his parents, and her son. *Id*. Plaintiff alleges disability due to intellectual disability[2] and low back pain. (T. at 40, 47.)

Plaintiff applied for disability insurance benefits and supplemental security income ("SSI") on October 7, 2011. (T. at 132.) The application was denied on December 22, 2011. (T. at 12.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). *Id.* The hearing was held on April 16, 2013. (T. at 29.) On May 6, 2013, the ALJ issued a decision finding that Plaintiff was not disabled. (T. at 9.) The ALJ's decision became the final decision

---

[1] The Administrative Transcript is found at Dkt. No. 10. Citations to the Administrative Transcript refer to the Bates stamped number rather than to the page numbers assigned by the Court's electronic filing system.

[2] The ALJ uses the term Mild Mental Retardation ("MMR") in his opinion. However, following Listing 12.05, I will use the term "intellectual disability" instead.

2

of the Commissioner when the Appeals Council denied Plaintiff's request for review on August 14, 2014. (T. at 1.) Plaintiff commenced this action on August 25, 2014. (Dkt. No. 1.)

## II. APPLICABLE LAW

### A. Standard for Benefits

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2006). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§ 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the Social Security Administration ("SSA") promulgated regulations establishing a five-step sequential evaluation process to determine disability. 20 C.F.R. § 416.920(a)(4) (2013). Under that five-step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are

> significant numbers of jobs in the national economy that the claimant
> can perform given the claimant's residual functional capacity, age,
> education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014.) "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)). If the plaintiff-claimant meets his or her burden of proof, the burden shifts to the defendant-Commissioner at the fifth step to prove that the plaintiff-claimant is capable of working. *Id.*

**B.     Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g) (2012); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to

determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010);[3] *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted). However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972); *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## III. THE ALJ'S DECISION

Here, the ALJ found that Plaintiff has not engaged in substantial gainful activity since October 7, 2011. (T. at 14.) The ALJ found that Plaintiff has an intellectual disability but does

---

[3] On Lexis, this published opinion is separated into two documents. The first is titled *Roat v. Barnhart*, 717 F. Supp. 2d 241, 2010 U.S. Dist. LEXIS 55442 (N.D.N.Y. June 7, 2010). It includes only the district judge's short decision adopting the magistrate judge's report and recommendation. The second is titled *Roat v. Comm'r of Soc. Sec.*, 717 F. Supp. 2d 241, 2010 U.S. Dist. LEXIS 55442 (N.D.N.Y. June 7, 2010). It includes only the magistrate judge's report and recommendation. Westlaw includes both the district court judge's decision and the magistrate judge's report and recommendation in one document, titled *Roat v. Barnhart*, 717 F. Supp. 2d 241 (N.D.N.Y. 2010). The Court has used the title listed by Westlaw.

not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart A, Appendix 1. (T. at 19.) Therefore, the ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with certain non-exertional limitations. *Id*. The ALJ found that she retained the ability to: understand and follow simple instructions and directions; perform simple, routine and repetitive tasks; regularly attend to a routine and maintain a schedule; relate to and interact appropriately with others to the extent necessary to carry out routine, simple and repetitive tasks; and handle reasonable levels of simple, routine and repetitive work-related stress in that she can make decisions directly related to the performance of simple, routine and repetitive tasks in a position with consistent job duties that does not require her to suprevise or manage the work of others. *Id*.

## IV.  THE PARTIES' CONTENTIONS

Plaintiff claims that the ALJ erred by failing to find that Plaintiff's condition met Listing 12.05(C), failing to properly set forth the full extent of the functional impairments to work due to Plaintiff's intellectual disability, and failing to consult with a vocational expert. (Dkt. No. 13.)

Defendant contends that the ALJ's decision applied the correct legal standards and is supported by substantial evidence and thus should be affirmed. (Dkt. No. 15.)

## V.  DISCUSSION

### A.  Plaintiff's Back Pain Is Not Severe

The ALJ found that Plaintiff's low back pain is not severe. (T. at 15.) Plaintiff argues

that the ALJ erred in this determination. (Dkt. No. 13 at 7.[4]) Defendant argues the ALJ's decision applied the correct legal standards and is supported by substantial evidence. (Dkt. No. 15 at 5.) For the reasons discussed below, the ALJ correctly found that Plaintiff's low back pain is not severe.

1. ALJ Properly Considered and Weighed The Expert Medical Opinions

Ian Stuppel, D.O., Plaintiff's treating physician, found that Plaintiff would require one ten minute rest period per hour or less and that she was likely to have four to five absences from work per month. (T. at 345-48.) He stated that in an eight hour day she could sit for six or more hours and stand/walk for at least two hours. *Id*. The ALJ rejected Dr. Stuppel's opinion because he did not identify diagnostic or clinical findings which support his conclusions. *Id.; see also* T. at 18. The ALJ also rejected the opinion of Lawrence Wiesner, M.D., who opined that Plaintiff should stand/walk for less than two hours a day and sit less than two hours a day, because of the lack of internal consistency in his records and the lack of a long relationship between Plaintiff and Dr. Wiesner. (T. at 357-62; *see also* T. at 19.) Instead, the ALJ credited some weight to the opinion of Pranab Datta, M.D., who opined that Plaintiff had a mild limitation for prolonged sitting, standing, walking, and climbing and that she should avoid heavy lifting, pushing, pulling, or carrying. (T. at 317-20; *see also* T. at 19.)

Plaintiff argues that the ALJ erred by giving Dr. Stuppel's medical opinion "little evidentiary weight." (Dkt. No. 13 at 12.) The Second Circuit has stated with respect to the nature and severity of a claimant's impairments, that "[t]he SSA recognizes a 'treating physician'

---

[4] Citations to page numbers in the parties' respective briefs (Dkt. Nos. 13 and 15) refer to the page number in the brief rather than to the page numbers assigned by the Court's electronic filing system.

7

rule of deference to the views of the physician who has engaged in the primary treatment of the claimant." *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). However, "[a] treating physician's statement that the claimant is disabled cannot itself be determinative." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). To override the opinion of the treating physician, the Second Circuit has held that the ALJ must explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist. *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008). If the treating physician's opinion is contradicted by other medical evidence or "overwhelmingly compelling" non-medical evidence, the opinion is not controlling. *Byam v. Barnhart*, 336 F.3d 172, 183 (2d Cir. 2003).

As to the first factor, the ALJ explicitly considered the frequency, length, nature, and extent of treatment. The ALJ stated that there were gaps in Plaintiff's treatment with Dr. Stuppel who was her primary care physician. (T. at 18.) He also noted several normal physical examinations of Plaintiff by Dr. Stuppel, and the lack of willingness on the part of Plaintiff to try conservative methods to alleviate her pain. *Id*. The ALJ also explicitly stated that Dr. Wiesner "did not have a longitudinal relationship with the claimant" so "his opinion is given little evidentiary weight." (T. at 19.)

Second, the objective medical evidence supports the ALJ's decision not to give controlling weight to the treating physician. Dr. Stuppel had ordered an MRI, which showed nothing remarkable and several straight-leg tests conducted were normal. (T. at 351, 355.) Additionally, Plaintiff had mostly normal medical examinations by Dr. Stuppel. (T. at 259-302.)

8

There were long periods of time where Plaintiff did not complain of any back pain. *Id.* Dr. Stuppel's conclusions were based largely on Plaintiff's subjective complaints of pain and not on objective medical evidence. (T. at 282-84, 287.) While Dr. Stuppel did state that Plaintiff would require one ten minute rest period per hour or less and that she was likely to have four to five absences from work per month, his own treatment notes do not corroborate this finding. (T. at 346.) Dr. Stuppel did not identify any findings to support his conclusion and his treatment notes did not indicate any level of dysfunction from the back pain. (T. at 282-84, 287.) Some of Dr. Stuppel's notes referenced a period before the treatment relationship began and were therefore based on Plaintiff's self-reports rather than medical findings. (T. at 348; *see also* T. at 18.) Other physicians also examined Plaintiff and concluded that she had mild or very mild restrictions due to the back pain. (T. at 319, 358.)

For the third and fourth factors, the ALJ also properly considered each physician's medical opinions and level of specialization. In this case, Dr. Stuppel was not a specialist, but a primary care physician. (T. at 260-88.) Therefore, his opinions may be given less weight than a specialist's opinion in a field relevant to Plaintiff's back pain. *Barnett v. Apfel*, 13 F. Supp. 2d 312, 316 (N.D.N.Y. 1998) (stating the ALJ improperly failed to follow a treating physician's conclusion about claimant's back pain, which was supported by the findings of an orthopedic surgeon). Dr. Wiesner, an independent orthopedic examiner, concluded that Plaintiff is mildly limited and mildly restricted with regard to her history of low back pain. (T. at 346.) He stated she required no further intervention and had very mild restrictions for pushing and pulling and lifting as well as prolonged sitting. (T. at 358.) Dr. Wiesner ultimately concluded that Plaintiff could stand/walk less than two hours a day and sit less than two hours a day, which is

9

inconsistent with his findings that Plaintiff did not have an impairment that affected walking. (T. at 18, 19, 369.) *See Micheli v. Astrue*, 501 F. App'x 26, 28 (2d Cir. 2012) (internal inconsistency was an independent basis to reject a doctor's opinion). Thus, the determination by the ALJ to give little evidentiary weight to both Dr. Stuppel's and Dr. Wiesner's opinions was proper and supported by substantial evidence.

Dr. Wiesner's objective medical findings that no further intervention was needed for the back pain and only mild restrictions should be imposed was further corroborated by Dr. Datta, a consultive examiner, who concluded Plaintiff had mild limitations for prolonged sitting, standing, walking, and climbing; and further concluded that she should avoid heavy lifting, pushing, or carrying. (T. at 319.) While the doctor-patient relationship was lacking between Plaintiff and Dr. Wiesner and Plaintiff and Dr. Datta, the ALJ reasonably declined to credit Dr. Stuppel's opinion by giving it little evidentiary weight because it was not well supported by medically reasonable clinical and laboratory diagnostic techniques and was inconsistent with other substantial evidence in the record. (T. at 18.)

2. ALJ's Affirmative Duty To Develop The Record

Plaintiff contends that the ALJ erroneously failed to develop the record in this case by not investigating Dr. Stuppel's notation stating "chronic back pain, likely mechanical in etiology with abnormal MRI." (Dkt. No. 13 at 9; *see* T. at 282.) Defendant argues that despite the notation in Plaintiff's medical records by Dr. Stuppel that there had been an abnormal MRI, all other medical records indicate this was a mistaken notation and there were no gaps in the treatment record, thus the ALJ did not have a duty to develop the record. (Dkt. No. 15 at 8.) For the reasons discussed below, the Court agrees with the Defendant.

The ALJ has a duty to affirmatively develop the administrative record in light of the non-adversarial nature of a benefits proceeding. *Shaw v. Chater*, 221 F.3d 126, 134 (2d. Cir. 2000). This includes a duty to contact treating and other medical sources to clear gaps in the record. *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999). An ALJ only has a duty to re-contact a treating physician if there are "obvious gaps" in the record. *Rosa*, 168 F. 3d at 79. A mere conflict in the record, however, does not mean an ALJ is required to re-contact a treating physician. *Micheli*, 501 F. App'x at 29. Although the Plaintiff's records from Dr. Stuppel do indicate that he wrote that an MRI performed was abnormal, there is nothing else in the record to suggest he ordered this MRI, or that it was ever performed. (T. at 282.) Plaintiff had an MRI in June 2009, which was unremarkable. (T. at 275.) Dr. Stuppel stated he would not order another MRI before Plaintiff tried physical therapy, which she stated she could not do because of a lack of childcare. (T. at 288.) There is no evidence that Plaintiff underwent another MRI or that Dr. Stuppel ordered another MRI to be performed. *Id*. This confusion is a "mere conflict" and thus does not demand that the ALJ further develop the record. *Micheli*, 501 F. App'x at 29.

Remand for gaps in the record is appropriate only where the court is unable to fathom the ALJ's rationale in relation to the evidence in the record without further findings or clearer explanation for the decision. *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982) (citations omitted). The record in this case was ripe with evidence regarding Plaintiff's medical history and the historically limited treatment she received for her back pain. Several different doctors examined her and concluded she had mild restrictions and limitations due to her back pain and this was corroborated by a normal MRI. (T. at 275, 282.)

Therefore, the ALJ did not err in finding Plaintiff's low back pain not severe. After

considering all relevant evidence and developing the record as fully, I find the ALJ applied the correct legal standards and the determination on severity is supported by substantial evidence.

## B. Plaintiff's Intellectual Disability Does Not Meet Listing 12.05(C)

The ALJ found that Plaintiff's intellectual disability did not meet Listing 12.05(C). (T. at 19.) Plaintiff argues the ALJ erred in this regard. (Dkt. No. 13 at 7.) Defendant argues that the ALJ's decision applied the correct legal standards and is supported by substantial evidence. (Dkt. No. 15 at 5.) For the reasons below, the ALJ properly concluded that Plaintiff's intellectual disability did not meet Listing 12.05(C).

Listing 12.05(C) is met if the claimant is intellectually disabled with an I.Q. of 60-70 and has "a physical or other mental impairment imposing an additional and significant work related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05(C). While the ALJ did find that Plaintiff had an intellectual disability due to her I.Q. of 67, he found that Plaintiff's back impairment was not severe enough to satisfy the second part of 12.05(C). (T. at 21.) For Plaintiff to fall under 12.05(C), the impairment needs to be severe. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05(C). "A finding of not severe should be made if the medical evidence establishes only a slight abnormality which would have no more than a minimal effect on an individual's ability to work." *Perez v. Astrue*, 907 F. Supp. 2d 266, 271 (N.D.N.Y. 2012) (citation and internal quotation marks omitted). An impairment will be found non-severe if the limitations are mild or moderate. 20 C.F.R. § 416.920a(d)(1). A finding of mild limitations and restrictions on heavy activities are completely consistent with a finding of non-severity. 20 C.F.R. § 416.920a(d)(1) (impairment will be found non-severe if limitations are "mild" or "moderate"); *Petell v. Comm'r. of Soc. Sec.*, No. 7:12-CV-1596 (LEK/CFH), 2014 WL 1123477, at *5, 2014

U.S. Dist. LEXIS 37285 (N.D.N.Y. Mar. 21, 2014) (doctor's limitation against heavy lifting only supported ALJ's finding that back impairment was non-severe). Here, as noted above, several doctors concluded that Plaintiff had only mild limitations and she should avoid heavy activities. Therefore, based on his correct determination that Plaintiff's low back pain was not severe, the ALJ properly concluded that she did not meet Listing 12.05(C), which requires a physical or other mental impairment imposing an additional and significant work related limitation of function besides an intellectual disability. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05(C).

    **C.    The ALJ's Determination of Plaintiff's RFC Properly Included All Impairments Due To Plaintiff's Intellectual Disability**

The ALJ found that despite Plaintiff's intellectual disability, she could still perform a full range of work at all exertional levels but with certain non-exertional limitations. (T. at 21.) The limitations include that Plaintiff can: understand and follow simple instructions and directions; perform simple, routine, and repetitive tasks with supervision and independently; maintain attention/concentration for simple, routine, and repetitive tasks; regularly attend to a routine and maintain a schedule; relate to and interact appropriately with others to the extent necessary to carry out routine, simple and repetitive tasks; and handle reasonable levels of simple, routine, and repetitive work-related stress in that she can make decisions directly related to the performance of simple, routine, and repetitive tasks in a position with consistent job duties that does not require Plaintiff to supervise or manage the work of others. *Id*. For the reasons listed below, the ALJ properly determined Plaintiff's RFC and included all impairments related to Plaintiff's intellectual disability.

A claimant's RFC is the most he can do despite his limitations. 20 C.F.R. §§

404.1545(a)(1), 416.945(a)(1). Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A regular and continuing basis means eight hours a day, for five days a week, or an equivalent work schedule. *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quotation marks omitted)).

It is the ALJ's job to determine a claimant's RFC and not to simply agree with a physician's opinion. 20 C.F.R.§ 404.1546(c). In determining RFC, the ALJ can consider a variety of factors including a treating physician's or examining physician's observations of limitations, the claimant's subjective allegations of pain, physical and mental abilities, as well as the limiting effects of all impairments even those not deemed severe. 20 C.F.R. § 404.1545(a). Age, education, past work experience, and transferability of skills are vocational factors to be considered. *Martone v. Apfel*. 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999). Physical abilities are determined by evaluation of exertional and non-exertional limitations. Exertional limitations include claimant's ability to walk, stand, lift, carry, push, pull, reach, and handle. 20 C.F.R. § 404.1569a(b).

The ALJ "is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2010). Once the ALJ has resolved a claimant's complaints of pain, he can then evaluate exertional and non-exertional limitations. *Lewis v. Apfel*, 62 F. Supp. 2d 648, 658 (N.D.N.Y. 1999). Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his

decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole. *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).

Plaintiff argues that the RFC does not adequately reflect her intellectual disability. The ALJ found that despite Plaintiff's intellectual disability, she could still perform simple, routine unskilled work. (T. at 21.) Dr. M. Apacible, a state agency psychiatrist whose opinion was given significant weight by the ALJ, stated Plaintiff could perform "simple, unskilled work" in his functional capacity assessment of Plaintiff. (T. at 337.) Plaintiff claims that Dr. Apacible's opinion should not be given significant weight. However, state agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims, and their opinions "may be entitled to greater weight than the opinions of treating or examining sources." Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *3 (S.S.A. July 2, 1991). An ALJ has the discretion to give certain medical opinions more weight than others. *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000).

Plaintiff is correct that credentials of providers and consultants alone are not enough. It is the supporting evidence in a particular case that is most significant. 20 C.F.R. § 407.1527(c). The ALJ discussed Plaintiff's mental impairments and concluded she could perform simple, unskilled work even with an intellectual disability. (T. at 22.) Robert J. Russell, Ed.D., a consultative psychologist whose opinion was given "some" weight, found that Plaintiff was severely limited in reading and arithmetic but less so in other adaptive functional areas. (T. at 257.) Dr. Russell supported this conclusion by the fact that Plaintiff cares for her three year old son, and does simple cooking, cleaning, and laundry. *Id*. Although she does need help to read

instructions and lift heavy items, Dr. Russell determined that Plaintiff could do a job of simple repetitive tasks. (T. at 252-57.) Even though Dr. Russell did ultimately conclude Plaintiff is disabled, his reasoning for concluding this was that jobs which only require these limited skills are hard to find, which is a decision reserved for the Commissioner. (T. at 23.) Dr. Russell only examined Plaintiff once and his conclusion was inconsistent with his findings that Plaintiff could do math at a third grade level and reading at a first grade level, which demonstrates she has very basic abilities in those areas. (T. at 22, *see* T. at 255.) Ultimately, the ALJ gave more weight to Dr. Apacible's opinion because of his program and professional expertise, and it was within his discretion to do this. *See Diaz v. Shalala*, 59 F.3d 307, 313, n.5 (2d Cir.1995) (an ALJ may rely upon the opinions of the state agency consultants when the evidence in the record supports the conclusions).

Performing simple, unskilled work does not discount Plaintiff's intellectual disability. These limitations were fully taken into consideration by the ALJ, as evidenced by the limitations he imposed upon the types of work Plaintiff could accomplish. (T. at 21.) *See Lawler v. Astrue*, 512 F. App'x 108, 111 (2d Cir. 2013) (finding that a social security applicant's mental abilities were properly taken into account when the ALJ noted several different medical opinions about his ability to remember and follow instructions, perform simple tasks, and engage in unskilled work)*.*

### D. The ALJ Did Not Err By Failing To Consult A Vocational Expert

Continuing with the fifth step of the sequential evaluation of disability, the Commissioner bears the responsibility of proving that plaintiff is capable of performing other jobs existing in significant numbers in the national economy in light of plaintiff's residual functional capacity,

age, education, and past relevant work. 20 C.F.R. §§ 416.920, 416.960. *See Edwards v. Astrue*, No. 5:07 CV 898 (NAM/DEP), 2010 WL 3701776, at *12, 2010 U.S. Dist. LEXIS 96830, at * 38 (N.D.N.Y.Sept. 16, 2010). Plaintiff contends that the ALJ erroneously determined the case without calling a vocational expert. The ALJ stated that:

> the claimant's ability to perform work at all exertional levels has been compromised by non-exertional limitations. However, these limitations have little or no effect on the occupational base of unskilled work at all exertional levels. A finding of 'not disabled' is therefore appropriate under the framework of section 204.00 in the Medical-Vocational Guidelines.

(T. at 24.)

A hearing officer can determine whether a claimant's non-exertional limitations significantly diminish his or her work capacity by determining whether the claimant can meet the basic mental demands of competitive, remunerative, and unskilled work as provided in Social Security Regulation 85 15. *See* SSR 85 15, 1985 WL 56857, at *3 (SSA 1985). These demands include the ability, on a sustained basis, to "understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." *Id*. at *4. A substantial loss of ability to meet any of these demands would severely limit the potential occupational base. *Sipe v. Astrue*, 873 F. Supp. 2d 471, 480 (N.D.N.Y. 2012). The Medical Vocational Guidelines (the "Grids") are inapplicable in cases where the claimant exhibits a significant non-exertional impairment. *Rosa,* 168 F.3d at 82; 20 C.F.R. § 404.1569a(c)(2). The ALJ cannot rely on the Grids if a non-exertional impairment has any more than a "negligible" impact on the claimant's ability to perform the full range of work, and instead must obtain the testimony of a vocational expert.

17

*Selian v. Astrue*, 708 F.3d 409, 421 (2d Cir. 2013). A non-exertional impairment is non-negligible "when it . . . so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." *Zabala v. Astrue,* 595 F.3d 402, 410 (2d Cir. 2010)**.** However, after it has been determined that a plaintiff can perform unskilled work, application of the Grids is appropriate. *Id*. at 410. *See also Howe v. Colvin,* No. 12 Civ. 6955 (JPO) (SN), 2013 WL 4534940, at *18, 2013 U.S. Dist. LEXIS 12195 (S.D.N.Y. Aug. 27, 2013) (a claimant's limitation to simple, routine, and repetitive tasks in a low stress environment had little or no effect on the occupational base of unskilled sedentary work). "The mere existence of a nonexertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines." *Bapp v. Bowen*, 802 F.2d 601, 603 (2d. Cir. 1986).

For reasons previously noted, the ALJ properly determined Plaintiff's RFC and concluded that Plaintiff remains able, on a sustained basis, to perform the basic mental demands of competitive, remunerative*,* unskilled work, including understanding, carrying out and remembering simple instructions, responding appropriately to supervision, and dealing with routine changes in a routine work setting. Therefore, since substantial evidence exists in the record for the ALJ to conclude that Plaintiff's non-exertional impairments did not significantly limit the range of work she could perform, he was under no obligation to identify specific jobs in the national economy that matched Plaintiff's RFC and his reliance on the Grids was appropriate. *Lawler v. Astrue,* 512 F. App'x 108, 112 (2d Cir. 2013). While the Commissioner has the burden to show that a claimant can still perform jobs that exist in the national economy, "[i]n the ordinary case, the Secretary satisfies his burden by resorting to the applicable medical vocational guidelines . . . ." *Bapp*, 802 F.2d at 604. Therefore, the ALJ did not err at Step Five of the

sequential review.

WHEREFORE, it is hereby

RECOMMENDED, that Commissioner's decision be **AFFIRMED** and Defendant's motion for judgment on the pleadings be **GRANTED** and the Compliant (Dkt. No. 1) be **DISMISSED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: August 6, 2015
      Syracuse, New York

_____
Thérèse Wiley Dancks
United States Magistrate Judge